# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| KARL HARTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-CV-3378-S-DGK-SSA |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Karl Harter petitions for review of an adverse decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"). Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. The administrative law judge ("ALJ") found he had multiple severe impairments including sleep apnea, degenerative joint diseases, bursitis, osteoarthritis, hypertension, and obesity, but retained the residual functional capacity ("RFC") to perform his past relevant work as an airplane engine inspector. The ALJ thus found him not disabled.

As explained below, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is therefore AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed the pending application on August 29, 2014, alleging a disability onset date of March 28, 2014. The Commissioner denied his application at the initial claim level. The ALJ heard his case but issued an unfavorable decision. The Appeals Council denied Plaintiff's

request for review, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

**Standard of Review**

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Chaney v. Colvin*, 812 F.3d 872, 876 (8th Cir. 2016). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Mabry v. Colvin*, 815 F.3d 386, 389 (8th Cir. 2016).

**Discussion**

The Commissioner follows a five-step sequential evaluation process to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). This five-step process considers whether: "(1) the claimant was employed; (2) he was severely impaired; (3) his impairment was, or was comparable to, a listed impairment; (4) he could perform past relevant work; and if not, (5) if he could perform any other kind of work." *Chaney*, 812 F.3d at 676.

At Step Four, the ALJ assessed an intricate RFC for Plaintiff:

> [He] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can never climb ladders and scaffolds but can frequently climb stairs and ramps; he can frequently stoop, kneel, crouch, and crawl; he is limited to frequently push[ing] and pull[ing] with the right arm and right leg, and reach[ing] in all directions with right arm; he is limited to frequent handling/gross and fingering/fine manipulation with his right hand; and he must avoid concentrated exposure to extreme cold.

R. at 15.[1] Plaintiff argues that the ALJ erred by: (1) mischaracterizing the evidence to support his credibility assessment; and (2) not assessing further limitations in his RFC. These arguments are without merit.

### I. The ALJ fairly discredited Plaintiff's credibility.

The ALJ partially rejected Plaintiff's complaints of total disability, R. at 15–19, which Plaintiff claims was error.

"Assessing and resolving credibility is a matter properly within the purview of the ALJ." *Chaney*, 812 F.3d at 676. In making this determination, the ALJ must take into account all record evidence, including the medical evidence. *Wright*, 789 F.3d at 853. "If the ALJ discredits a claimant's credibility and gives a good reason for doing so, [the court must] defer to [his] judgment even if every factor is not discussed in depth." *Milam v. Colvin*, 794 F.3d 978, 984 (8th Cir. 2015).

The ALJ offered ample reasons for discounting Plaintiff's credibility. First, Plaintiff engaged in myriad daily activities that undermine his complaints. He reported, among other

---

[1] The Commissioner defines "light work" as:

> [W]ork involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

daily activities: driving, preparing simple meals, doing laundry, loading the dishwasher, shopping by himself, carrying bags, and mowing with a riding lawnmower. R. at 166–73. Cumulatively, these activities—which require pulling, pushing, reaching, and walking—undermine Plaintiff's claims that he has less RFC than the ALJ found. *See Brown v. Astrue*, 611 F.3d 941, 955–56 (8th Cir. 2010) (affirming an ALJ's finding that a claimant could perform light work given her daily activities including "getting her daughter off to school, cleaning, cooking at times, going to workout at times, visiting her mother, going to church almost every Sunday[,] and Bible class some days").

Second, Plaintiff worked for many years despite his allegedly longstanding impairments. R. at 37–38, 145. He stopped working not because of his impairments, but because he was laid off. R. at 38, 160. The ALJ fairly held this detracted from Plaintiff's credibility. *See Milam*, 794 F.3d at 985 ("Offsetting [the claimant's lengthy] work history, however, is the fact that [she] was laid off from her position, rather than forced out due to her condition." (alterations omitted)).

Third, Plaintiff accepted unemployment benefits after his alleged onset date. R. at 37, 146. "A claimant may admit an ability to work by applying for unemployment compensation benefits because such an applicant must hold himself out as available, willing and able to work." *Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991); *see also* Mo. Rev. Stat. § 288.040. Therefore, the ALJ fairly drew adverse credibility inferences from Plaintiff's receipt of unemployment benefits, notwithstanding the opposite inferences offered by Plaintiff.

Finally, none of Plaintiff's physicians placed any restrictions on his ability to work. R. at 18. The ALJ may properly consider the fact that no physician observed limitations consistent with disability. *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010) (permitting an ALJ to consider "the absence of objective medical evidence" in evaluating claimant credibility). The

only treatment options recommended to Plaintiff were minimal, including stretching, anti-inflammatory medications, icing, and wearing a walking boot. R. at 46, 336, 340; *see Benskin v. Bowen*, 830 F.2d 878, 884 (8th Cir. 1987) (finding that treatment through hot showers and doses of Advil and aspirin suggested that the claimant's condition was not disabling). His physician told him that if he did not improve significantly within six to eight weeks, she would discuss medically removing damaged tissue from the area to improve healing. R. at 341; *see Debridement*, *Webster's New Twentieth Century Dictionary* (2d ed. 1979). However, Plaintiff has never sought this procedure. R. at 46. This undermines his claim. *See Cypress v. Colvin*, 807 F.3d 948, 951 (8th Cir. 2015) (holding that a claim of disability is undermined by declining surgical intervention).

Because the ALJ offered sound reasons for partially discrediting Plaintiff's subjective complaints, the Court rejects this argument. *See Milam*, 794 F.3d at 984.

**II. The ALJ included all credible limitations in his RFC assessment.**

Plaintiff next contends that "the record contained no medical opinion addressing [his] ability to physically function in a full-time work setting." Pl.'s Br. 8 (Doc. 6). He argues that the ALJ summarized some medical evidence bearing on his *impairments*, but that none of that medical evidence suggests *limitations* flowing from those impairments.

A claimant's RFC is the most that he can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). "The RFC must (1) give appropriate consideration to all of [the claimant's] impairments, and (2) be based on competent medical evidence establishing the physical and mental activity that the claimant can perform in a work setting." *Mabry*, 815 F.3d at 390 (alteration in original). Although the ALJ must rely on some medical evidence to determine a claimant's RFC, he "is not limited to considering medical evidence exclusively." *Cox v. Astrue*,

5

495 F.3d 614, 619 (8th Cir. 2007); *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam) ("To the extent [that the claimant] is arguing that residual functional capacity may be proved *only* by medical evidence, we disagree.").

Plaintiff argues that the ALJ overestimated his RFC with regard to two impairments. First, he focuses on his right shoulder, which causes pain that he claims is exacerbated by driving, pulling, or holding objects above his head. R. at 47, 55, 216. The ALJ purportedly accounted for this impairment by limiting him to frequently pushing, pulling, and reaching with his right arm. R. at 15.

Substantial record evidence supports this finding. Single decisionmaker[2] Noelle Lloyd opined that Plaintiff's shoulder does not impose any limitations beyond those in the ALJ's RFC assessment. R. at 74. Plaintiff's grip strength is normal. R. at 212. Plaintiff testified that he could go bow hunting and fishing, which implies frequent pushing, pulling, and reaching. R. at 52–53, 309, 328. Plaintiff identifies no contrary evidence, beyond his discredited subjective complaints, which suggest further limitations for his right shoulder. Therefore, substantial evidence on the record as a whole supports the ALJ's RFC as it pertains to his right shoulder. *See Liner v. Colvin*, 815 F.3d 437, 438 (8th Cir. 2016) (per curiam) (finding that an RFC formulation that prohibited the claimant from overhead reaching with his right arm amply accounted for his right shoulder impairments where the record reflected limited range of motion but also normal coordination, limb function, grip strength, and sensory capabilities).

Second, Plaintiff argues that the ALJ gave his ankle and Achilles tendon impairments short shrift. The ALJ tried to account for these impairments by restricting Plaintiff to a "good

---

[2] A single decisionmaker is a lay disability examiner authorized to adjudicate cases without a concurring opinion from a physician. *Reichenbach v. Astrue*, No. 4:11cv1551 TCM, 2012 WL 4049009, at *9 (E.D. Mo. Sept. 13, 2012). A single decisionmaker is not a medical source. *Id.*

deal" of walking or standing, frequent pushing and pulling with his right leg, frequent climbing of stairs and ramps, and frequent postural changes. R. at 15; *see* 20 C.F.R. § 404.1567(b).

The record supports the RFC's determination. Plaintiff could bear weight after injuring each ankle. R. at 73, 213, 335. A physician noted improvement of his symptoms and "good ankle and hindfoot range of motion." R. at 336, 340. Although he reported pain, *e.g.* R. at 321 (left ankle), 335 (right), there is no evidence that that pain posed functional limitations. *See Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (requiring pain to pose functional limitations for it to be disabling). As discussed above, Plaintiff was recommended only conservative treatment options.

Significantly, there does not appear to be any credible evidence, medical or otherwise, to contradict the ALJ's findings. Therefore, the record before the ALJ supported the conservative limitations. *See also Liner*, 815 F.3d at 438.

Finally, Plaintiff contends that "the record contained no medical opinion addressing [his] ability to physically function in a full-time work setting." Pl.'s Br. 8 (Doc. 6). He argues that the ALJ should have more fully developed the record to include such medical opinions.

ALJ must solicit further medical opinions only when the record is patently deficient or inconsistent. *Pinkston v. Colvin*, 13-CV-539-DGK-SSA, 2014 WL 2960958, at *3 & n.4 (W.D. Mo. June 30, 2014). The record here *does* include medical opinions addressing Plaintiff's ability to function in the workplace. These opinions show that Plaintiff visited various medical providers who examined his shoulder, ankle, and Achilles tendon, and did not identify any significant limitations. These opinions are substantial record evidence on his limitations, or lack thereof. The record was not patently deficient or inconsistent, so there was no need to further develop the record. *Cf. Godoua v. Colvin*, 564 F. App'x 876, 878 (8th Cir. 2014) (per curiam)

(remanding for failure to develop a record containing *diagnoses* of anxiety and depression but no related examination findings, because the ALJ had insufficient evidence to assess the *extent* of the claimant's mental problems).

## Conclusion

Because substantial evidence on the record as a whole supports the ALJ's opinion, the Commissioner's decision denying Title II benefits is AFFIRMED.

**IT IS SO ORDERED.**

Date:  June 3, 2016                                                  /s/ Greg Kays
                                                                     GREG KAYS, CHIEF JUDGE
                                                                     UNITED STATES DISTRICT COURT